**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES H. CUNNINGHAM,<br><br>                    Petitioner,<br><br>          vs.<br><br>JOHN MARSHALL, Warden,<br><br>                    Respondent. | Civil No.  07-2183 DMS (BLM)<br><br><br>**REPORT AND RECOMMENDATION RE DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

I.       <u>INTRODUCTION</u>

     James H. Cunningham, a state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his San Diego Superior Court conviction in case number SCE243538.  The Court has considered the Petition and Exhibits, Respondent's Answer, Petitioner's Traverse and all the supporting documents submitted by the parties.  Based upon the documents, and for the reasons set forth below, the Court recommends that the Petition be **DENIED**.

II.      <u>FACTUAL BACKGROUND</u>

     The  following  statement  of  facts  is  taken  from  the California Court of Appeal opinion, *People v. Cunningham*, No.

D046320, slip op. (Cal. Ct. App. Mar. 9, 2006).  This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).  The facts as found by the state appellate court are as follows:

A.  *The People's evidence*

Jose Castro testified that on September 12, 2004, he was helping Rebecca Knox (Rebecca) and Christopher Knox (Christopher) pack because they were moving. Castro had been living with the Knoxes in their apartment.  Cunningham lived in an apartment below the Knoxes' apartment.  At some point during the evening, Cunningham came to the Knoxes' apartment and asked Castro for a vacuum that Rebecca had borrowed.  Castro replied that Rebecca was not home. Some time later, from downstairs in the parking lot of the apartment complex, Cunningham shouted to Castro, "Where's my cell phone?"  Cunningham then said, "I'll be right back."

Moments later, Cunningham "busted in the door" of the Knoxes' apartment, holding a short rifle.  Castro and Rebecca were in the apartment and saw Cunningham come through the front door.  Cunningham placed his hand on the trigger and, addressing Castro, said: "Where's my cell phone goddamn it?  I want my cell phone back.  You took my cell phone." Cunningham held the gun against Castro's throat.  Castro grabbed a cordless telephone. Cunningham took the telephone from Castro and pushed him up against the wall with the gun. Cunningham then threw the telephone back to Castro and said, "Go ahead and call the cops. I'll come back and kill you all."

Castro testified that at this point, Christopher came out of a bedroom holding a baseball bat. Christopher took the telephone from Castro and told Cunningham to get out of the apartment.  Cunningham began to leave the apartment.  As Cunningham was leaving the apartment, heading to the parking lot of the complex, he continued yelling at and threatening Castro and Christopher.

Rebecca Knox testified that when she returned home on the evening in question, Christopher and Castro told her that Cunningham had asked them about his missing cellular telephone.  Later, while Rebecca was in the living room of the Knoxes' apartment with Castro, Cunningham walked into the apartment through the open front door.  Rebecca could see that Cunningham was holding a gun at his side.  Cunningham began yelling at Castro, accusing him of taking Cunningham's cellular telephone and threatening to kill him. Castro denied having taken the phone.  Cunningham put the gun to Castro's neck and pushed him backward. Castro grabbed a cordless telephone.  Cunningham took the telephone from Castro and threw it into the hallway.  At this point, Christopher came out of the bedroom holding a baseball bat and told Cunningham to leave.  Cunningham then left the apartment.

While Cunningham was in the parking lot of the apartment complex, Christopher telephoned 911. [Footnote 2: Christopher Knox did not testify.]  The tape of the 911 call was played for the jury.  On the tape, Christopher can be heard yelling, "Yep.  You gonna let me have it tonight.  I'm gonna shoot you in your face, you come up here again."  Rebecca took the telephone from Christopher and said to the 911 operator, "He just pulled a fuckin' gun on me and my husband and my roommate."  Later during the 911 call, the operator asked Rebecca whether Cunningham had shot anyone.  Rebecca responded, "No.  He fuckin' held it to my roommate's head.  He slammed him to the ground with it."

At around 10:00 or 11:00 p.m. that night, Officer Stephen Paz of the El Cajon Police Department heard a radio dispatch regarding a disturbance at the apartment complex.  The dispatcher provided a description of Cunningham and his truck.  As Officer Paz was responding to the scene, he stopped at a traffic light.  While stopped at the light, Paz saw a person driving a truck.  The person and the truck matched the description he had heard over the radio.  The driver of the truck was headed in the opposite direction from Paz. Paz made a U-turn and began to follow the truck.  The driver of the truck ran a red light as he approached the entrance to a freeway.  A second police officer in another police car was also following the truck.  Both officers turned on their overhead lights.  As the driver of the truck began to merge onto the freeway, Paz saw the driver throw something out of the passenger window.  Shortly thereafter, the officers were able to stop the truck, and took Cunningham into custody.  Officer Paz retrieved the item he had seen Cunningham throw from the window.  It was a shotgun.

After the incident, Cunningham was evicted from his apartment. A property manager found two guns in a closet while she was cleaning out Cunningham's apartment, and called police.

B. *The Defense*

Cunningham testified at trial. Cunningham lived in the same apartment complex as the Knoxes, and considered Rebecca to be a friend. Cunningham had initially been friendly with Christopher as well, but, over time, he and Christopher had grown hostile toward each other. Cunningham claimed that a couple of months prior to the events underlying the charged offenses, he had confronted Rebecca and Christopher about a bogus check Rebecca had deposited to his checking account. According to Cunningham, Christopher "flew off the handle" and threatened Cunningham with a baseball bat.

Castro and Rebecca also both testified that Cunningham and Christopher had gotten into several arguments with each other prior to the incident in question. Castro testified that he had heard Christopher threaten to kill Cunningham during these arguments.

On September 12, 2004, between 10:00 and 10:30 p.m., Cunningham returned to his apartment after work. He noticed that a screen to one of his windows had been pried open and that his daughter's bicycle, some clothes, his cellular telephone, and checks were missing from the apartment. Cunningham noticed that Rebecca, Castro and other people were outside on the Knoxes' balcony. Cunningham asked the people on the balcony whether they had seen anyone around his apartment. Cunningham believed that someone who was staying in the Knoxes' apartment might have taken his property. Cunningham said that the people on the Knoxes' balcony "got smart" with him and he went inside his apartment to "cool down."

Cunningham later went upstairs to the Knoxes' apartment and asked to speak to Rebecca. Castro told him she was not home, but that she would return in 10 or 15 minutes. Cunningham told Castro to tell Rebecca that he would be back. Cunningham then left the apartment complex and went to the laundry. When he returned, several people were on the Knoxes' balcony. Cunningham said he wanted to see Rebecca. Several people on the balcony yelled at him. Cunningham went inside his apartment and armed himself with a shotgun. Cunningham claimed he armed himself because, six months earlier, he had been assaulted by people who had been hanging around the apartment complex, and also because he was afraid of Christopher due to Christopher's prior threats.

-4-

07cv2183

Cunningham said he went upstairs to the Knoxes' apartment, with his shotgun, to attempt to retrieve his property.  As Cunningham was standing in the doorway to the Knoxes' apartment, Christopher came toward him with a baseball bat.   The door to the apartment began to close. Cunningham told the people inside the Knoxes' apartment that he would get back with them and that he was going to call the police.   Christopher asked Cunningham what he was holding in his hand, and Cunningham told him it was a gun.  Cunningham turned and began to walk down the stairs.   He denied ever having pointed the gun at anyone.

Cunningham said that after this confrontation, he decided to leave the apartment complex.  As he was leaving, Christopher yelled at him and threatened him. Cunningham got into his truck and drove onto the freeway.   Cunningham noticed that the police were following him.  He decided to throw the gun out of the car window because he feared being shot.   Cunningham admitted he had two additional guns that he kept locked in a closet in his apartment.

(Resp't Lodgment No. 5 at 2-7.)

## III.        PROCEDURAL BACKGROUND

On September 15, 2004, the District Attorney for the County of San Diego filed an Information charging James Cunningham with one count of burglary of an inhabited dwelling (Cal. Penal Code §§ 459, 460) (Count 1);  one count of assault with a firearm (Cal. Penal Code §§ 245, 12022.5(a)) (Count 2); one count of possession of a firearm by a felon (Cal. Penal Code § 12021(a)(1)) (Count 3); and one count of possession of a deadly weapon (Cal. Penal Code § 12020(a)(1)) (Count 4). (*See* Resp't Lodgment No. 1 at 001-003.)  In the Information it was also alleged that Cunningham had been convicted of one serious prior felony (Cal. Penal Code §§ 337(a)(1), 668, 1192.7(c)) and had one prior "strike" conviction (Cal. Penal Code §§ 667(b)-(i), 1170.12, 668).  (Resp't Lodgment No. 1 at 003.)

/ / /

07cv2183

On January 6, 2005, after a jury trial, Cunningham was convicted of Counts 2, 3 and 4.[1]  (Resp't Lodgment No. 1 at 065-67.)  The jury also found that Cunningham had personally used a firearm as to Count 2 (Cal. Penal Code § 12022.5(a)).  (*See* Resp't Lodgment No. 1 at 065, 093.)  Cunningham admitted having a prior conviction, including a serous felony prior and a strike prior under California's Three Strikes law (Cal. Penal Code §§ 667.5(a)(1), (b)-(i); 668; 1170.12; and 1192.7).  On March 10, 2005, the court sentenced Cunningham to 12 years in prison.  (*See* Resp't Lodgment No. 1 at 093.)

Cunningham appealed to the California Court of Appeal, Fourth Appellate District, Division One.  (*See* Resp't Lodgment No. 3.)  On March 9, 2006, the appellate court affirmed Cunningham's conviction in an unpublished decision.  (Resp't Lodgment No. 5.)  Cunningham filed a petition for review in the California Supreme Court.  (Resp't Lodgment No. 6.)  The court denied the petition without comment on May 17, 2006.  (Resp't Lodgment No. 7.)

On April 9, 2007, Cunningham filed a petition for writ of habeas corpus in the California Supreme Court which was denied on August 22, 2007 with citation to *In re Waltreus*, 61 Cal. 2d 218 (1965); *In re Dixon*, 41 Cal. 2d 756 (1953); *In re Swain*, 34 Cal. 2d 300, 304 (1940); *People v. Duvall*, 9 Cal. 464, 474 (1995); and *In re Lindley*, 29 Cal. 2d 709 (1947).  (Resp't Lodgment Nos. 8, 9.)

/ / /

---

[1]  The jury found Cunningham "not guilty" of residential burglary (Count 1).  (*See* Resp't Lodgment No. 1 at 064.)

On November 13, 2007, Cunningham filed a federal petition for writ of habeas corpus along with a motion for stay and abeyance in this Court [doc. nos. 1, 3].  On March 7, 2008, Cunningham filed a First Amended Petition followed by a motion for stay and abeyance [doc. no. 16].  At about the same time, Cunningham filed a petition for habeas corpus in the California Supreme Court.  (Resp't Lodgment No. 10.)  On October 28, 2008, the California Supreme Court summarily denied Petitioner's state habeas petition.  (Resp't Lodgment No. 11.)

This Court denied Cunningham's motion for stay as moot on December 19, 2008 [doc. no. 48].  Respondent filed an Answer to the First Amended Petition on April 21, 2009 [doc. no. 62].  Cunningham filed a Traverse on July 30, 2009 [doc. no. 70].  In response to an Order from this Court, Respondent filed Supplemental Lodgments on February 17, 2010 [doc. no. 75].  On March 2, 2010, Cunningham filed a "Motion for Procedural Default" [doc. no. 77].

**IV.**     **DISCUSSION**

**A.**     **Scope of Review**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in *violation of the Constitution or laws or treaties of the United States.*

28 U.S.C § 2254(a) (emphasis added).

/ / /

/ / /

The current petition is governed by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits* in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

To obtain federal habeas relief, Cunningham must satisfy either § 2254(d)(1) or § 2254(d)(2).  *See Williams v. Taylor*, 529 U.S. 362, 403 (2000).  The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but  unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

In order for a petitioner to satisfy § 2254(d)(2), he or she must demonstrate that the factual findings upon which the state

court's adjudication rests, assuming it rests on a factual determination, is objectively unreasonable. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id*.

**B.  Analysis**

In his First Amended Petition ("FAP"), Cunningham claims: his Sixth Amendment rights to confront witnesses against him and to present a defense were violated when the trial court excluded potential impeachment evidence Cunningham wanted to use against a prosecution witness (*see* FAP, Ground Four at 49-55)[2]; his due

---

[2]  Cunningham's First Amended Petition is lengthy and without page numbers.  Therefore, this Court has paginated the document consecutively.

process rights were violated when the trial court improperly instructed the jury (*see* FAP, Grounds Five and Six at 124-128, 130-135); his Sixth Amendment right was violated based on several instances of ineffective assistance of trial counsel (*see* FAP, Ground 3 at 69-115); and, his Sixth Amendment rights were violated as a result of several instances of ineffective assistance of appellate counsel (*see* FAP, Grounds 1 and 2 at 7-67).

### 1.   Cross-Examination of Rebecca Knox

Cunningham alleges that his Sixth Amendment rights to confront witnesses against him and to present a defense were violated when the trial court limited the admission of impeachment evidence during the cross-examination of a prosecution witness, Rebecca Knox ("Rebecca"). (*See* FAP at Ground 4, 49-55.) Respondent argues that the state appellate court's denial of these claims was neither contrary to, nor an unreasonable application of, clearly established law. (*See generally*, Answer at 19-20.)

Cunningham raised these claims in his petition for review to the California Supreme Court. (Resp't Lodgment No. 6.) The petition was denied without comment or citation. (Resp't Lodgment No. 7.) Because there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision which addressed the claims, the California Court of Appeal. *See Ylst*, 501 U.S. at 801-06. In rejecting these claims, the court of appeal stated:

1. *Procedural Background*

During a pretrial conference, defense counsel requested permission from the court to impeach Rebecca

at trial with evidence that she had previously accused Christopher of perpetrating domestic violence against her and later recanted the accusations. Counsel stated:

> Rebecca Knox will be testifying. Ms. Knox previously filed a report accusing her husband of a domestic violence situation. She then recanted the statements after her husband was arrested. Charges were dropped against him. I think this goes toward her credibility. Unfortunately, I left the file in my office, but I think it was from 2001. Of course, I would like to use that to impeach her in terms of her credibility today and what she said to the police at the time.

After argument from the People and defense counsel, the court ruled that the evidence would not be admitted:

> That will be excluded. It has relevance, no doubt about it. But in weighing it's [sic] relevance, versus the other factors, such as the time it will take to bring it in, the trial within a trial that it will most certainly require, its relevance is outweighed by those other factors under [Evidence Code section] 352, and therefore, it will be excluded and not referred to.

. . . .

3.   *The exclusion of the proffered evidence did not violate Cunningham's constitutional rights*

Cunningham claims the trial court's exclusion of the proffered evidence violated his federal constitutional rights to confront adverse witnesses and to present a defense.

a.   *The exclusion of the evidence did not violate Cunningham's right to confront adverse witnesses*

"The confrontation clauses of both the federal and state Constitutions guarantee a criminal defendant the right to confront the prosecution's witnesses. (U.S. Const., 6th Amend.; Cal. Const. art. I, § 15.) That right is not absolute, however." (*People v. Cromer* (2001) 24 Cal.4th 889, 892.)

In *People v. Quartermain* (1997) 16 Cal.4th 600, 623-624, the court explained the scope of the right of confrontation in the context of examining an adverse witness on issues related to the witness's credibility:

07cv2183

Although the right of confrontation includes the right to cross-examine adverse witnesses on matters reflecting on their credibility, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination." [Citation.] In particular, notwithstanding the confrontation clause, a trial court may restrict cross-examination of an adverse witness on the grounds stated in Evidence Code section 352. [Citation.] A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted. [Citations.]

*Quartermain* also makes clear that a defendant's right of confrontation is not necessarily violated even where a trial court abuses its discretion in excluding impeachment evidence bearing on a witness's credibility. In *Quartermain*, the Supreme Court concluded that the trial court had abused its discretion under Evidence Code section 352 in excluding evidence that a prosecution witness had bribed judges in criminal proceedings unrelated to defendant's case. (*Quartermain*, supra, 16 Cal.4th at p. 624.) However, the *Quartermain* court concluded that the court's exclusion of the evidence would not have caused a reasonable jury to reach a significantly different impression of the witness's credibility because his credibility had been extensively impeached by his admissions that he had perjured himself numerous times in other proceedings, committed other acts of bribery, and was extensively involved in the trafficking of drugs. (*Ibid.*) The *Quartermain* court concluded that the defendant's confrontation rights had not been violated by the erroneous exclusion of the impeachment evidence. (*Ibid.*)

In this case. . . a reasonable jury would not have received a significantly different impression of Rebecca's credibility regarding the incident in question if the court had permitted defense counsel to cross-examine her regarding her prior recantation of domestic violence allegations against Christopher. (*See Sapp*, supra, 31 Cal.4th at p. 290 [concluding trial court did not violate defendant's right of confrontation by precluding cross-examination of People's witness on collateral credibility issue].) Thus, the trial court did not violate Cunningham's right to confrontation by excluding the proffered evidence.

-12-

*b.    The exclusion of the proffered evidence did not violate Cunningham's right to present a defense*

In *People v. Reeder* (1978) 82 Cal.App.3d 543, the court outlined the interplay between a trial court's authority to exclude evidence pursuant to Evidence Code section 352 and a defendant's constitutional right to present a defense.

"Evidence Code section 352 must bow to the due process right of a defendant to a fair trial and to his right to present all relevant evidence of significant probative value to his defense.    In *Chambers v. Mississippi* (1973) 410 U.S. 284, it was held that the exclusion of evidence, vital to a defendant's defense, constituted a denial of a fair trial in violation of constitutional due-process requirements.

"We do not mean to imply, however, that a defendant has a constitutional right to present all relevant evidence in his favor, no matter how limited in probative value such evidence will be so as to preclude the trial court from using Evidence Code section 352." (*People v. Reeder*, *supra*, 82 Cal.App.3d at p. 553.)

In *Boyette*, *supra*, 29 Cal.4th at pages 427-428, the Supreme Court explained that errors in excluding defense evidence on a minor point does not constitute a deprivation of a defendant's constitutional right to present a defense:

"'As a general matter, the "[a]pplication of the ordinary rules of evidence ... does not impermissibly infringe on a defendant's right to present a defense." [Citations.] Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense. [Citation.] If the trial court misstepped, "[t]he trial court's ruling was an error of law merely; there was no refusal to allow [defendant] to present a defense, but only a rejection of some evidence concerning the defense." [Citation.]' [Citations.]"

In this case, evidence of Rebecca's recantation of domestic violence allegations against Christopher was neither of significant probative value nor vital to Cunningham's defense, for the reasons discussed in part II.A.2, ante.   The evidence was, at best, tangentially relevant to one witness's credibility. Cunningham was allowed to present a defense and did so, both through his own testimony and through extensive cross-examination of the People's witnesses, including

-13-

07cv2183

1
2
Rebecca.  The trial court did not "completely exclud[e] evidence of [his] defense." (*Boyette*, *supra*, 29 Cal.4th at p. 428.)

3
4
We conclude the trial court did not violate Cunningham's constitutional right to present a defense by excluding the proffered evidence.

5
(Resp't Lodgment No. 5 at 8-17.)

6   The state court's rejection of Cunningham's Sixth Amendment

7 Confrontation Clause claim was neither contrary to, nor an

8 unreasonable application of clearly established law.  The Sixth

9 Amendment guarantees a criminal defendant the right "to be

10 confronted with the witnesses against him." U.S. CONST. amend.

11 VI.    The Supreme Court has stated that the right of

12 confrontation "means more than being allowed to confront the

13 witness physically," but rather "[t]he main and essential

14 purpose of confrontation is to secure for the opponent the

15 opportunity of cross-examination." *Davis v. Alaska*, 415 U.S.

16 308, 315-16 (1974) (internal quotation marks and citation

17 omitted). The Sixth Amendment, however, does not prevent a trial

18 judge from setting "reasonable limits on such cross-examination

19 based on concerns about, among other things, harassment,

20 prejudice, confusion of the issues, the witness' safety, or

21 interrogation that is repetitive or only marginally relevant."

22 *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

23   Here, the trial court excluded evidence that Rebecca had

24 filed a report in an unrelated action accusing her husband,

25 Christopher Knox ("Christopher"), of domestic violence, which

26 she later recanted.  (Resp't Lodgment No. 2 at 12, 13.)  This

27 evidence potentially was relevant because it could be used to

28 challenge Rebecca's credibility.    However, there are many

reasons why Rebecca may have chosen not to pursue domestic violence charges against her husband. Accordingly, the evidence had minimal probative value on whether Rebecca was testifying truthfully in this case. *See Van Arsdall*, 475 U.S. at 679 (Sixth Amendment does not prevent a trial judge from placing reasonable limits on cross-examination where the evidence is "only marginally relevant"). And as state court noted, permitting evidence of Rebecca's recantation may have lead to a mini-trial on whether Christopher had, or had not, actually assaulted Rebecca. (*See* Resp't Lodgment No. 5 at 10.)

Moreover, the defense was permitted to extensively cross-examine Rebecca regarding her credibility and possible biases against Cunningham. Rebecca admitted she and her husband had disagreements with Cunningham in the past. (Resp't Lodgment No. 2 at 82-83, 90-91.) Rebecca testified that she and Cunningham had, at one time, been friendly but that her husband did not approve of the friendship. In addition, Cunningham had loaned Rebecca money and then she and Cunningham had argued over the money she owed him. (*Id.* at 83.) Rebecca also testified that Knox and Cunningham had had several "loud" arguments in the past year. (*Id.* at 83-84.) Rebecca admitted that she believed Cunningham had complained about the number of visitors coming and going from her and Knox's apartment and thus may have been partly responsible for their eviction. (*Id.* at 90-91.)

The defense also questioned Rebecca about inconsistencies between her testimony and her statements to the 9-1-1 operator and law enforcement. (*Id.* at 88-90.) For instance, the defense pointed out that Rebecca testified at trial that Cunningham

pushed Castro to the floor.  However, she did not include this fact when giving her statement to police.  (*Id.* at 92-93.)

In sum, the defense was able to elicit testimony from Rebecca that she did not have a good relationship with Cunningham at the time of the incident, that she blamed Cunningham for certain unpleasant events, and that her trial testimony was not entirely consistent with her previous statements.  As such, the jury had sufficient information to appraise Rebecca's truthfulness.  *See Skinner v. Cardwell*, 564 F.2d 1381, 1389 (9th Cir. 1977) (finding no error when excluded evidence was only marginally relevant and the jury was able to adequately appraise the witness's motivation and bias based on other evidence).  Thus, the trial court's exclusion of the impeachment evidence did not violate the Sixth Amendment.  *See Van Arsdall*, 475 U.S. at 679.

Further, even if the evidence of Rebecca's recantation should have been admitted, the state court's conclusion that there was no prejudice was reasonable.  Violations of the Confrontation Clause are subject to harmless-error analysis set forth in *Chapman v. California*, 368 U.S. 18, 24 (1967).  *See Van Arsdall*, 475 U.S. at 684.  A court must determine whether the error was harmless beyond a reasonable doubt, based on the following factors: the importance of the witnesses' testimony; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the testimony of the witness; the extent of cross-examination otherwise permitted; and the overall strength of the prosecution's case.  *Id.* at 684.

Here, the prosecution had a strong case against Cunningham. Rebecca's testimony generally was consistent with the statements she and Christopher made during the call to 9-1-1. Only minutes after the incident, Rebecca told the operator that Cunningham had hit Castro with a gun. (Resp't Lodgment No. 1 at 010-011.) Her testimony also was corroborated by Castro, who unequivocally stated that Cunningham had struck him with a gun and knocked him down. (*See* Resp't Lodgment No. 2 at 32-33, 51.) The only contradictory evidence was the testimony of Cunningham. Accordingly, because the evidence against Cunningham was strong, the state court's conclusion that the exclusion of the unrelated domestic violence evidence was harmless beyond a reasonable doubt was neither contrary to, nor an unreasonable application of, *Chapman*. *See id*; *see also Williams*, 529 U.S. at 403.

Cunningham's claim that his Sixth Amendment right to present a defense was violated fails for the same reasons. Clearly established federal law holds that the right to present evidence and witnesses is essential to due process; it is also guaranteed by the compulsory process clause of the Sixth Amendment. *Taylor v. Illinois*, 484 U.S. 400, 409 (1988); *Denham v. Deeds*, 954 F.2d 1501, 1503 (9th Cir. 1992). The Supreme Court has cautioned, however, that "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1983); *see also Perry v. Rushen*, 713 F.2d 1447, 1452 (9th Cir. 1983). "Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused."

1 *Scheffer*, 523 U.S. at 308.

2    As discussed above, the excluded impeachment evidence was
3 only marginally relevant to Rebecca's credibility.  That she
4 recanted a previous report of domestic violence committed
5 against her by her husband does not strongly suggest that her
6 testimony regarding the assault of Castro would not be credible.
7 Thus, the evidence was not highly probative.  Evidence which is
8 merely cumulative or of little probative value "will almost
9 never outweigh the state interest in efficient judicial
10 process."  *Perry*, 713 F.2d at 1453.  In addition, because the
11 defense was able to cross-examine Rebecca about the accuracy of
12 her testimony and biases she may have had against Cunningham
13 (*see* Resp't Lodgment No. 2 at 82, 89, 90-93), the restriction of
14 impeachment testimony was not unreasonable.  *See Scheffer*, 523
15 U.S. at 308.  Accordingly, the exclusion of the evidence did not
16 amount to a due process violation. *See id.*

17    Finally, even if the exclusion of evidence was deemed a
18 constitutional error, Cunningham would not be entitled to habeas
19 relief because, as discussed above, the evidence against
20 Cunningham was reliable and strong.  Cunningham cannot show that
21 with the impeaching evidence or, even without Rebecca's
22 testimony, the verdict would have been different.  *See Brecht*
23 *v. Abrahamson*, 507 U.S. 619, 623 (1993) (holding that in order
24 to obtain habeas relief a petitioner must show that any
25 constitutional error had a "substantial and injurious effect or
26 influence" on the verdict).

27    In sum, Cunningham's Sixth Amendment right to confront
28 witnesses against him and his right to present a defense were

-18-

not violated.  The state court's denial of the claims was neither contrary to, nor an unreasonable application of, clearly established law.  *See Williams*, 529 U.S. at 403; 28 U.S.C. 2254(d).  Cunningham is not entitled to relief as to the claims raised in Ground Four.

### 2.  Instructional Errors

In Grounds Five and Six, Cunningham alleges his due process rights were violated when the trial court erroneously instructed the jury. First, he claims the jury should have been instructed under California Jury Instruction – Criminal ("CALJIC") No. 12.50.  (*See* FAP at Ground 6, 130-35.)  Second, he asserts the trial court erred when it instructed the jury pursuant to CALJIC No. 2.52.  (*See* FAP at Ground 5, 124-28.)  Respondent argues that neither claim is cognizable on federal habeas corpus. Further, Respondent contends the state court's rejection of the claims was neither contrary to, nor an unreasonable application of clearly established federal law.  (*See* Answer at 220-22.)

### a.  CALJIC No. 12.50

Cunningham claims his due process rights were violated when the trial court failed to instruct the jury regarding a felon's right to use a firearm in self-defense, pursuant to CALJIC NO. 12.50.  (*See* FAP, Ground 6 at 130-35.)  Respondent argues that the state appellate court's denial of these claims was neither contrary to, nor an unreasonable application of, clearly established law.  (*See generally*, Answer at 20-22.)

Cunningham raised this claim in his petition for review to the California Supreme Court.  (*See* Resp't Lodgment No. 6.)  The petition was denied without comment or citation.  (*See* Resp't

Lodgment No. 7.)  Because there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision which addressed the claims, the California Court of Appeal.  *See Ylst*, 501 U.S. at 801-06.

In denying Cunningham's claim, the appellate court stated:

> Cunningham claims the trial court erred in denying his request to instruct the jury on count 3 pursuant to CALJIC No. 12.50 regarding a felon's right to use a firearm in self-defense.  "'A trial court has no duty to instruct the jury on a defense-even at the defendant's request-unless the defense is supported by substantial evidence.'  [Citation.]"  (*People v. Hill* (2005) 131 Cal.App.4th 1089, 1101.)  A trial court's refusal to instruct on a defense "will be upheld on appeal where the record contains no substantial evidence to support the instructions." (*Ibid.*)

> In count 3 of the information, the People charged Cunningham with possessing a firearm as a felon (§ 12021, subd. (a)(1)).  During the jury instruction conference, defense counsel requested that the trial court instruct the jury pursuant to CALJIC No. 12.50.

> CALJIC No. 12.50 provides:

> A person previously convicted of a felony does not violate § 12021 of the Penal Code by being in possession of a firearm if:

> 1. [He][She] as a reasonable person had grounds for believing and did believe that [he][she] was [or] [others were] in imminent peril of great bodily harm; and

> 2. Without preconceived design on [his][her] part, a firearm was made available to [him][her];

> 3. [His][Her] possession of such firearm was temporary and for a period of time no longer than that in which the necessity or apparent necessity to use it in self-defense continued; and

> 4. The use of the firearm was reasonable under the circumstances and was resorted to only if no alternative means of avoiding the danger were available."

The trial court rejected the request, stating:

> 12.50 entitled 'Use of a Firearm by a Convicted Felon Self-Defense' is in the court's view designed and restricted to those situations in which a person finds himself in a situation without any pre-planning, and a firearm is either close at hand or immediately given to him for purposes of self-defense, and he therefore possess [sic] it under those spontaneous circumstances.

> In the instant case, the evidence was that the defendant had possessed the firearms for, I think he said, two to three months that they've been in his house, and that's simply-and that he had to unlock a box to get them, this does not appear to the court to be a situation with 12.50 would be applicable because it was not a spontaneous quick moving situation where he [was] tossed a gun to defend himself by somebody, which I think is what is required here.

> So, [defense counsel], I will decline to read 12.50 as requested by the defense. . . .

Cunningham acknowledges that CALJIC No. 12.50 is premised on "a narrow exception," to section 12021's prohibition of possession of a firearm by a felon, established in *People v. King* (1978) 22 Cal.3d 12 (*King*). The defendant in *King* was a guest at a party in an apartment. (*Ibid*.) A fight broke out at the party. (*Id*. at p. 16.) A group of people who had not been invited to the party and who were friends of one of the men involved in the fight, pounded on the front door of the apartment and threatened to break it down. (*Id*. at pp. 17-18.) One of the members of this uninvited group threw a barbeque grill into the apartment through a window. (*Id*. at p. 18.) The grill and the glass from the window hit the defendant. A woman who was frightened by the intruders gave defendant a pistol from her purse. Defendant fired the gun in an attempt to frighten the intruders. (*Ibid*.) Among other crimes, defendant was charged with possession of a firearm as a felon. (*Id*. at p. 19.) Defendant requested that the trial court instruct the jury that if the jury found he had used the firearm in self-defense, it could find him guilty on the possession charge only if it found that he had possessed the weapon prior to such use. (*Id*. at pp. 19-20.) Defendant also requested that the court instruct the jury that if the weapon was used in a manner that reasonably appeared necessary to prevent imminent injury, he was not guilty of possessing a firearm as a felon. (*Id*. at p. 20.) The trial court

denied the requests (*id.* at p. 19), and the jury found defendant guilty of possessing a firearm as a felon. (*Id.* at p. 15.)

On appeal, defendant renewed his claim that he was entitled to the requested self-defense instructions on the charge of possessing a firearm as a felon. (*King*, *supra*, 22 Cal.3d at p. 15.)  The *King* court agreed, stating, "Inasmuch as defendant's brief use of a concealable firearm, without predesign or prior possession of the weapon, in the exercise of the right to self-defense, defense of others, or defense of habitation would not constitute the possession, custody, or control of the firearm which the Legislature has prohibited in section 12021, it was error for the court to fail to instruct the jury regarding the relevance of these defenses to the 12021 charge." (*Id.* at pp. 26-27.)

In *People v. McClindon* (1980) 114 Cal.App.3d 336, 339-340 (*McClindon*), the court of appeal rejected the defendant's claim that he was entitled to a self-defense instruction pertaining to his possession of a firearm.  The defendant, who was a felon, kept a firearm near his bed for protection.  One night, he and his wife were awakened by a noise near their bedroom window.   (*Id.* at p. 339.)  Defendant's wife became hysterical, and defendant yelled, "What in the devil is going on out there?" (*Ibid.*) Defendant then fired three gunshots out the window. (*Ibid.*)  Upon his conviction for possessing a firearm as a felon, defendant claimed that the trial court erred by failing to give an instruction on self-defense pursuant to King. (*McClindon*, *supra*, 114 Cal.App.3d at p. 339.)   In rejecting this claim, the *McClindon* court reasoned:

> *King* clearly is not applicable here. Appellant's possession of the pistol was admittedly not brief and further it was not without design or prior possession. Appellant admitted that he had possession of the firearm for approximately five months and that he kept it by his bed for protection because he did not want to shoot anybody with his rifle." (*Id.* at p. 340.)

In this case, Cunningham admitted at trial that he had possessed three firearms for a couple of months prior to the incident leading to the charged offenses. He further testified that he kept the firearms locked away in a closet. When asked whether the guns were easy to get to in case he needed them for "protection," Cunningham conceded that they were not.  When the People asked Cunningham if he needed three guns for protection, he admitted, "I really don't need them, no."  With respect to the charged offenses, it was

undisputed that Cunningham armed himself with a firearm prior to being physically threatened by Christopher, and that Cunningham left the scene of the incident armed with a firearm.

As in *McClindon*, *supra*, 114 Cal.App.3rd at page 340, the evidence in this case clearly establishes that Cunningham's possession of the firearms was neither temporary nor without predesign. We reject Cunningham's argument that because he had been subjected to threats and assaults prior to the incident in question, he was entitled to maintain a cache of firearms for his own protection. *King* establishes a narrow exception to section 12021's prohibition for the immediate use of a firearm by a felon due to an imminent threat without prior possession. (*King*, *supra*, 22 Cal.3d at pp. 26-27.) Cunningham's possession of the firearms in this case falls far outside this exception.

The trial court did not err in refusing Cunningham's request to instruct the jury, as to count 3, pursuant to CALJIC No. 12.50 regarding a felon's right to use a firearm in self-defense.

(Resp't Lodgment No. 5 at 22-26.)

To the extent Cunningham claims the trial court's refusal to instruct the jury pursuant to CALJIC No. 12.50 was erroneous as a matter of state law, his claim is not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). To merit relief, clearly established law requires a petitioner to show that the instructional error so infected the entire trial that the resulting conviction violated due process. *Id.* at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Where failure to give an instruction is an issue, the burden on the petitioner is "especially heavy." *Kibbe*, 431 U.S. 154.

The Ninth Circuit has recognized, however, that "a criminal defendant is also entitled to adequate instruction on his or her theory of defense." *Bashor v. Risley*, 730 F.2d 1128, 1240 (9th

Cir. 1984); *Bradley v. Duncan*, 315 F.3d 1091, 1098–1101 (9th Cir. 2002).   In the context of a trial court's failure to give an instruction on a theory of the defense, the Ninth Circuit has noted that "[u]nder the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness . . . [which] require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *Bradley v. Duncan*, 315 F.3d 1091, 1098–99 (9th Cir. 2002) (citing *Mathews v. United States*, 485 U.S. 58, 63 (1988) and *California v. Trombetta* , 467 U.S. 479, 485 (1984)).

Thus, a "'[f]ailure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable.'" *Clark v. Brown*, 450 F.3d 898, 904–05 (9th Cir. 2006) (quoting *Beardslee v. Woodford*, 358 F.3d 560, 577 (9th Cir. 2004)); *Solis v. Garcia,* 219 F.3d 922, 929 (9th Cir. 2000); *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984) (stating that "[a] criminal defendant is entitled to adequate instructions on his or her theory of defense") (quoting *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976).)

Although Cunningham's defense was based, at least in part, on self-defense, he was not entitled to CALJIC No. 12.50. As the appellate court noted, CALJIC 12.50 is based on a "narrow exception" to the proscription against possession of a firearm by a felon.   It is appropriate only in cases in which evidence shows a defendant had temporary possession of a firearm and used it in self-defense without pre-planning and disposes of the

firearm as soon as possible. *See People v. King*, 22 Cal. 3d 12, 24 (1978); *see also People v. Mijares*, 6 Cal. 3d 415, 418-23 (1971) ("To "possess" means to have actual control, care and management of, and not a passing control, fleeting and shadowy in its nature"); *see also People v. Sullivan*, 215 Cal.App.3d 1446, 1453 (1989) (holding instruction on momentary possession of narcotics not warranted where defendant took narcotics from a shed to his car and drove a quarter mile where he was stopped by the police, which showed his possession was extended rather than momentary).

Cunningham testified to possessing *three* guns for "a couple months" prior to the September 12, 2004 incident, with knowledge that the law prohibited his possession. (Resp't Lodgment No. 2, vol. 3 at 231-33.)  He also acknowledged that he intentionally retrieved the gun from his apartment before confronting the victim in Knox's apartment.  (*Id.* at 222-223.)  Cunningham claimed he needed the gun to defend himself because he had been jumped six months prior by people hanging around Knox's apartment and because Christopher Knox previously had threatened him with a baseball bat.  (*Id.*)

Even under Cunningham's version of events, he was not entitled to CALJIC No. 12.50 because he could not meet the necessary elements for this defense.  First, his possession was with "preconceived design" because he deliberately went to his apartment to retrieve the firearm.  Second, Cunningham's possession was not "temporary" because he kept the gun with him until he threw it out the window of his truck as the police were chasing him.   Thus, evidence presented at trial clearly

demonstrated that the instruction did *not* apply to Cunningham. *See Mijares*, 6 Cal. 3d at 418-23.

Accordingly, failure to instruct the jury as to CALJIC No. 12.50 did not deprive Cunningham of an opportunity to present a meaningful defense. *See Clark v. Brown*, 450 F.3d at 904-05. Moreover, Petitioner has failed to carry his "especially heavy" burden of showing that the instructional error "so infected the entire trial that the resulting conviction violates due process." *Kibbe*, 431 U.S. at 154. The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law. *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254. The Court therefore recommends Claim Six be **DENIED**.

b.   CALJIC No. 2.52

Cunningham alleges his due process rights were violated when the trial court erroneously instructed the jury under CALJIC No. 2.52. (*See* FAP Ground 5 at 124-28.) Respondent argues that the state appellate court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established law. (*See generally*, Answer at 22-23.) As with his previous claims, this Court looks through the California Supreme Court's silent denial of the claim to the decision of the California Court of appeal. *See Ylst*, 501 U.S. at 801-06. The appellate court rejected the claim, stating:

> During a conference on jury instructions, the People requested that the court instruct the jury regarding the inference a jury may draw based on a defendant's flight after the commission of a crime. The court indicated that it intended to instruct the jury pursuant to CALJIC No. 2.52. Defense counsel objected, stating "I don't think what happened was

sufficient with flight." The court overruled the objection, reasoning:

> I think it directly applies. I mean, the – certain events occurred, and he jumped in his car and took off, and those events have been alleged to be crimes. So 2.52 will be read over the objection of the defense.

> And in the instruction there are various alternatives in this, such as flight, attempted flight, escape, etc. And in this case, I'm simply going to read flight, 'The flight of a person immediately after the commission of a crime, or after accused [sic] of a crime, is not sufficient in itself.' Otherwise, that will be read in it's [sic] entirety verbatim."

The trial court instructed the jury pursuant to CALJIC No. 2.52. as follows:

> The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding whether a defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide.

There is substantial evidence from which the jury could reasonably infer that Cunningham's flight reflected consciousness of guilt

Cunningham contends that the trial court erred in instructing the jury pursuant to CALJIC No. 2.52 regarding flight from the scene of the crime because there is no substantial evidence that his departure from the scene of the incident supported the consciousness of guilt inference permitted by the instruction. In reviewing this claim, we determine whether there is substantial evidence in the record to support the trial court's giving of the instruction. (*People v. Crandell* 1988) 46 Cal.3d 833, 869 (*Crandell*), overruled on another ground in *People v. Crayton* (2002) 28 Cal.4th 346, 364–365.)

Section 1127c provides:

> In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially

-27-

as follows:

> The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence.   The weight to which such circumstance is entitled is a matter for the jury to determine.

> No further instruction on the subject of flight need be given.

> An instruction on flight is properly given if the jury could reasonably infer that the defendant's flight reflected consciousness of guilt, and flight requires neither the physical act of running nor the reaching of a far-away haven.  [Citation.]  Flight manifestly does require, however, a purpose to avoid being observed or arrested." (*Crandell*, *supra*, 46 Cal.3d at p. 869.)

> Cunningham admitted at trial that he left the apartment because he "didn't want to get arrested."  It was also undisputed that Cunningham left the scene of the incident – his own apartment building – immediately after the incident.  A police officer testified that Cunningham ran a red light as he was driving away from the scene.  Cunningham admitted that while he was being pursued by the police, he threw his shotgun out the window of his car.  Thus, there was clearly evidence from which the jury could reasonably infer that Cunningham's flight reflected consciousness of guilt.

(Resp't Lodgment No. 5 at 17-19.)

As discussed above, Cunningham must show the instructional error rendered the trial fundamentally unfair.  *Estelle*, 502 U.S. at 72.  The allegedly erroneous instruction must be considered in the context of the trial record and the instructions as a whole.  *Id.*; *Kibbe*, 431 U.S. at 156; *Cupp*, 414 U.S. at 146-47.  The instructions must be more than just erroneous, Cunningham must show that there was a reasonable likelihood that in light of the instructions as a whole, the jury applied the challenged instruction in such a way that his

07cv2183

constitutional right to due process was violated.  *See Carriger v. Lewis*, 971 F.2d 329, 334 (9th Cir. 1992) (en banc).

This Court is bound by state court's determination that CALJIC No. 2.52 was properly given as a matter of California law.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  Further, the Court has no basis for finding that the instruction violated the Constitution.  The instruction merely advised the jury that the flight of a person after the commission of a crime may be considered, in light of all the other facts proved, in deciding whether the defendant is guilty.  The instruction made clear that evidence of flight is not by itself sufficient to support a guilty finding.  CALJIC No. 2.52 in no way relieved the prosecution of its burden of proving each element of each crime beyond a reasonable doubt.

The prosecution presented uncontroverted evidence that Cunningham fled the scene of the crime.  *See McMillian v. Gomez*, 19 F.3d 465, 469 (9th Cir. 1994) (flight instruction not erroneous where prosecution made strong showing it was defendant who left the scene of the crime).  Cunningham claims that he left the scene out of fear for his own safety and therefore the instruction was improper.  However, the Ninth Circuit has held that there is no due process violation where jury was instructed on flight even though trial court refused to advise jury of possible reasons for flight other than consciousness of guilt.  *Karis v. Calderon*, 83 F.3d 1117, 1132 (9th Cir. 2002); *see also Houston v. Roe*, 177 F.3d 901, 910 (9th Cir. 1999).

Accordingly, the state court's denial of this instructional error claim neither was contrary to nor involved an unreasonable

application of clearly established Supreme Court law. *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254. The Court therefore recommends this claim be **DENIED**.

### 3. *Ineffective Assistance of Trial Counsel*

In Claim Three, Cunningham argues his Sixth Amendment right to effective assistance of counsel was violated when his attorney failed to object to several erroneous jury instructions (*See* FAP, Ground 3, Arguments 1, 2 and 4) and failed to file a motion to suppress. (*Id.*, Ground 3, Argument 3.) Cunningham raised these issues for the first and only time in the California Supreme Court and they were denied without comment or citation. (Resp't Lodgment Nos. 10, 11.) Because there is no reasoned decision, this Court must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *Himes*, 336 F.3d at 853.

The clearly established Supreme Court law regarding ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668, 688 (1984). *Strickland* requires a two-part showing. First, an attorney's representation must have fallen below an objective standard of reasonableness. *Id.* at 688. Second, a defendant must have been prejudiced by counsel's errors. *Id.* at 694. Prejudice can be demonstrated by a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).

07cv2183

Further, *Strickland* requires that "[j]udicial scrutiny of counsel's performance . . . be highly deferential." *Strickland*, 466 U.S. at 689.  There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 686-87.  The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one.  *Id.* at 697.

a.   <u>Failure to Object to CALJIC Number 2.02 and Failure to Request 2.01</u>

Cunningham argues trial counsel was ineffective in failing to object to instructions given the jury regarding circumstantial evidence.  Specifically, he alleges defense counsel should have objected when the trial court instructed the jury pursuant to CALJIC No. 2.02 (Sufficiency of Circumstantial Evidence to Prove Specific Intent or Mental State) and should have requested CALJIC No. 2.01 (Sufficiency of Circumstantial Evidence – Generally) be read in its place.  (*See* FAP, Ground 3, Argument 1 at 69-79.)

Under California law, only one of the above instructions may be given.[3]  After some consideration, the trial court determined

_____

[3] The "Use Note" for CALJIC Nos. 2.01 and 2.02 states:

CALJIC 2.01 and CALJIC 2.02 should never be given together.  This is because CALJIC 2.01 is inclusive of all issues, including mental state and/or specific intent, whereas CALJIC 2.02 is limited to just mental state and/or specific intent.  Therefore, they are alternative instructions.  If the only circumstantial evidence relates to specific intent or mental state, CALJIC 2.02 should be given.  If the circumstantial evidence relates to other matters, or relates to other matters as well as specific intent or mental state, CALJIC 2.01 should be given and not CALJIC 2.02. (*See People v. Honig*, 48 Cal. App. 4th 289, 340-341, 55 Cal. Rptr.2d 555 (3d Dist.1996); *People v.*

that CALJIC No. 2.02 was the appropriate instruction. (*See* Resp't Lodgment No. 2, vol. 3 at 267-68.)   The   jury was instructed as follows:

> The specific intent with which an act is done may be shown by the circumstances surrounding the commission of the act.   However, you may not find the defendant guilty of the crime charged in Count 1 to be true, unless the proved circumstances are not only (1) consistent with the theory that the defendant had the required specific intent but (2) cannot be reconciled with any other rational conclusion.
>
> Also, if the evidence as to any specific intent permits two reasonable interpretations, one of which points to the existence of the specific intent and the other to its absence, you must adopt that interpretation which points to its absence.   If, on the other hand, one interpretation of the evidence as to the specific intent appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable.

(Resp't Lodgment No. 1 at 024.)   Further, the trial court provided the following instruction on "Flight After Crime," pursuant to CALJIC No. 2.52:

> The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved
>
> facts in deciding whether a defendant is guilty or not guilty.   The weight to which this circumstance is entitled is a matter for you to decide.

(Resp't Lodgment No. 1 at 035.)

Defense counsel was not ineffective in failing to object to

---

*Marshall*, 13 Cal. 4th 799, 849, 55 Cal. Rptr.2d 347, 919 P.2d 1280 (1996).)   When the prosecution does not "substantially rely" on circumstantial evidence to prove guilt, neither instruction is required. (*See People v. Wright*, 52 Cal.3d 367, 406, 276 Cal. Rptr. 731, 802 P.2d 221 (1990).)

CALJIC No. 2.02.   An attorney's failure to make a meritless objection or motion does not constitute ineffective assistance of counsel. *Jones v. Smith*, 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000) (citing *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985)); *see also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (holding that "the failure to take a futile action can never be deficient performance").   The trial court properly declined to instruct the jury under CALJIC No. 2.01 because the instruction is only appropriate when "circumstantial evidence is 'substantially relied on for proof of guilt.'"   *People v. Wright*, 52 Cal. 3d 367, 406 (1990).

Here, the only circumstantial evidence that did not go toward state of mind was evidence that Cunningham had fled the scene and threw the gun out the window.   As such, the trial court properly elected to give CALJIC No. 2.02 along with a specific instruction on "flight after crime."   (*See* Resp't Lodgment No. 2, vol. 3 at 267-68.)   Any objection by defense counsel would have therefore been futile. *See Wright*, 52 Cal. 3d at 406.   Thus, Cunningham has failed to satisfy both the deficiency prong and the prejudice prong set forth in *Strickland*. *See Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) (noting that if a petitioner challenges the failure to make a futile objection, he fails both *Strickland* prongs).

Based on an independent review of the record, the state court's silent denial of the claim was neither contrary to, nor an unreasonable application of *Strickland*. *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254.   The Court therefore recommends this claim be **DENIED**.

b.        Failure to Object to CALJIC No. 9.00

Cunningham asserts trial counsel was ineffective in failing to request that the trial court sufficiently instruct the jury as to the definition of "Assault" under CALJIC No. 9.00. (*See* FAP, Ground 3, Argument 1 at 80-83.) Cunningham acknowledges that the trial court did instruct the jury as to CALJIC No. 9.00. He claims, however, that the trial court erred in failing to re-iterate or explain to the jury that the definition of assault provided in CALJIC No. 9.00 applied to the lesser-included offense of "simple assault." (*See id.*) Respondent fails to address this claim in the Answer.[4] (*See generally*, Answer.)

Petitioner's claim fails because the trial court adequately instructed the jury on the definition of assault – with regard to the charged offense of assault with a deadly weapon (Cal. Penal Code § 245) *and* the lesser-included offense of simple assault (Cal. Penal Code § 240). Under California law, a trial court must sua sponte instruct the jury on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present. *See People v. Breverman*, 19 Cal. 4th 142, 154 (1998). Here, the jury was instructed on the general definition of assault pursuant to CALJIC No. 9.00.[5] This instruction provides the elements for

---

[4]  Respondent does, however, address a very similar claim based on ineffective assistance of appellate counsel. (*See* Answer at 15-16.)

[5]  The jury was instructed, in part:

In order to prove an assault, each of the following elements must be proved: 1. A person willfully committed an

"simple assault" under Cal. Penal Code section 240 – the lesser-included offense for Count 2. (*See* Resp't Lodgment No. 1 at 45, CALJIC No. 9.00, "Assault – Defined.")  The jury was further instructed that an "assault" committed with a "firearm" constituted "assault with a deadly weapon" under California Penal Code section 245.  (*Id.* at 44; CALJIC No. 9.02.)

The trial court informed the jury that it could convict Cunningham of the lesser-included offense of assault.  (*See* Resp't Lodgment No. 1 at 68; *see also* Resp't Lodgment No. 2 at 300.)  Specifically, the trial court instructed the jury pursuant to CALJIC Number 17.12, that it could reach a guilty verdict on the lesser-included offense of simple assault if the jury was not satisfied beyond a reasonable doubt that Cunningham was guilty of assault with a firearm.[6]  (Resp't Lodgment No. 2

---

act which by its nature would probably and directly result in the application of physical force on another person; [¶] 2. The person committing the act was aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of this act that [sic] physical force would be applied to another person; and [¶] 3. At the time the act was committed, the person committing the act had the present ability to apply physical force to the person of another.

(Resp't Lodgment No. 1 at 045; *see also* Resp't Lodgment No. 2 at 295-96.)

[6] The jury was instructed under to CALJIC No. 17.12, as follows:

If you are not satisfied beyond a reasonable doubt that a defendant is guilty of the crime of which he is accused in Count 2, and you unanimously so find, you may convict him of any lesser crime provided you are satisfied beyond a reasonable doubt that [he] [she] is guilty of that crime.

You will be provided with guilty and not guilty verdict forms for the crime charged in Count 2, and lesser crimes thereto.  The crime of assault is a lesser crime to

07cv2183

at 300-01; *see also* Resp't Lodgment No. 1 at 51.)  The court even reiterated the instructions regarding the lesser-included offense in Count 2, just before sending the jury to begin deliberations, stating:

---

that of assault with a firearm.

Thus, you are to determine whether the defendant is guilty or not guilty of the crime charged in Count 2, or any lesser crimes.  In doing so, you have discretion to choose the order in which you evaluate each crime and consider the evidence pertaining to it.  You may find it to be productive to consider and reach tentative conclusions on all charges and lesser crimes before reaching any final verdict[s].

Disregard the instruction previously given which requires that you return but one verdict form as to Count 2.

Before you return any final or formal verdict, you must be guided by the following:

1.  If you unanimously find a defendant guilty of the crime of which [he] [she] is accused in Count 2, your foreperson should sign and date the corresponding verdict form. All other verdict forms as to Count 2 must be left unsigned.

2. If you are unable to reach a unanimous verdict as to the crime of which the defendant is accused in Count 2, do not sign any verdict forms as to Count 2 and report your disagreement to the court.

3.  The court cannot accept a guilty verdict on a lesser crime, unless the jury also unanimously finds and returns a signed verdict form of not guilty as to the charged greater crime.

4.  If you unanimously agree and find a defendant not guilty of the crime with which he is charged in Count 2, but cannot reach a unanimous agreement as to a lesser crime charged in Count 2, your foreperson should sign and date the not guilty verdict form as to the charged greater crime, and report your disagreement as to the lesser crime to the court.

(Resp't Lodgment No. 1 at 51-51.)

-36-

> Now, I told you I'd give you a quick primer on that lesser included offense issue again. . . The simplest way for me to think about it is that there are three possible things that can happen on count 2, and, frankly with any other count.  You can find the defendant guilty, you can find him not guilty, or you can fail to come up with a unanimous verdict. [¶] Only if you find him not guilty on the charged offense of assault with a firearm. . . . can I then accept a verdict of either guilty or not guilty on the lesser offense of simple assault.

(Resp't Lodgment No. 2 at 327-28.)

Viewing all of the instructions as a whole, the trial court properly and thoroughly instructed the jury as to the lesser-included offense of simple assault. *See Breverman*, 19 Cal. 4th at 154.  Because there was no error by the trial court, any objection by defense counsel would have been futile.  Thus, Cunningham has failed to satisfy both the deficiency prong and the prejudice prong of *Strickland*.  *See Miller*, 882 F.2d at 1434.  As such, the state court's denial of the claim was neither contrary to, nor an unreasonable application of *Strickland*.  *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254.  The Court recommends this claim be **DENIED**.

### c.   Failure to Object to CALJIC No. 17.19 and "General Intent" Instructions

Next, Cunningham argues defense counsel was ineffective, in violation of Cunningham's Sixth Amendment rights, because counsel failed to object when the trial court improperly instructed the jury that the "personal use of a firearm" enhancement was a "general intent" crime. (*See* FAP, Argument 1 at 84-87.)  Cunningham argues CALJIC No. 17.19 was insufficient because it "makes no mention of the mental state which must accompany the menacing display" of a firearm.  (*Id.* at 85.)

-37-

07cv2183

Respondent does not address this specific ground for relief in his Answer.[7]  (*See generally*, Answer.)

As discussed above, the jury convicted Cunningham of assault with a firearm and further found that Cunningham personally used a firearm during the commission of the assault, in violation of Cal. Penal Code § 12022.5(a).  (Resp't Lodgment No. 1 at 0065.) The mental state required under section 12022.5(a) is "general intent."  *See People v. Wardell*, 162 Cal. App. 4th 1484, 1496 (2008).  "A crime is characterized as a 'general intent' crime when the required mental state entails only an intent to do the act that causes the harm; a crime is characterized as a 'specific intent' crime when the required mental state entails an intent to cause the resulting harm."  *People v. Davis*, 10 Cal.4th 463, 518-19, fn. 15 (1995).

The jury was instructed on the elements of section 12022.5 pursuant to CALJIC No. 17.19.  Specifically, the trial court stated:

> It is alleged in Counts 1 and 2 that the defendant personally used a firearm during the commission of the crime charged.  If you find the defendant guilty of one or more of the crimes charged, you must determine whether the defendant personally used a firearm in the commission of those felonies.

> The word "firearm" includes a shotgun.  The "firearm" need not be operable.  The term "personally used a firearm" as used in this instruction, means that the defendant must have intentionally displayed a firearm in a menacing manner, intentionally fired it or intentionally struck or hit a human being with it.

> The People have the burden of proving the truth of this allegation.  If you have a reasonable doubt that [it] is true, you must find it to be not true.

---

[7] Respondent does, however, address a very similar claim based on ineffective assistance of appellate counsel.  (*See* Answer at 16.)

(Resp't Lodgment No. 1 at 050.)

CALJIC 17.19 accurately describes a "general intent" crime in that a defendant must "intentionally" do the act which causes harm -- in this case "display the firearm in a menacing manner," "fire it," or "strike or hit a human being with it." *See People v. Atkins*, 1 25 Cal. 4th 76, 82 (2001) (stating that "when the definition of a crime [or enhancement] consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act.  This intention is deemed to be a general criminal intent").

Further, contrary to Cunningham's assertion, California courts have held that the phrase "displays a firearm in a menacing manner" is one commonly understood and thus does not require further definition.  *See Wardell*, 162 Cal. App. 4th at 1496.  Thus, defense counsel had no reason to object because the jury was properly instructed under CALJIC No. 17.16.  *See United States v. Chambers*, 918 F.2d 1455 (9th Cir. 1990) (finding competent counsel could reasonably forgo requesting the jury be instructed on a concept that "an average juror would understand . . . without specific definition").

Cunningham argues that, even if CALJIC No. 17.16 was proper, defense counsel should have requested clarification because the jury may have been confused by CALJIC No. 3.30,[8] which defined

---

[8]   The trial court instructed the jury pursuant to CALJIC No. 3.30 as follows:

In the crimes charged in Counts 2, 3, 4. . . , there must exist a union or joint operation of act or conduct and general criminal intent.  General intent does not require

07cv2183

"general intent," because it did not specify the definition applied to Penal Code 12022.5(a). Cunningham's argument is without merit because, as discussed above, CALJIC No. 17.16 alone adequately set forth the intent required to find Cunningham guilty of the firearm-use enhancement.

Because competent counsel could have concluded the instructions given by the court were adequate, counsel was not ineffective for failing to request clarification or further instruction. *See Weighall v. Middle*, 215 F.3d 1058, 1063 (9th Cir. 2000). Moreover, because the jury was properly instructed, any such request would have been denied. Thus, Cunningham has failed to satisfy both the deficiency prong and the prejudice prong of *Strickland*. *See Miller*, 882 F.2d at 1434. As such, the state court's denial of the claim was neither contrary to, nor an unreasonable application of *Strickland*. *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254. The Court recommends this claim be **DENIED.**

> d.   Failure to Request Instruction on "Personally Armed with a Firearm"

Cunningham asserts defense counsel was ineffective in failing to request an instruction on California Penal Code sections 12022(a) (armed with a firearm) or 12022.3 (use or possession [of a firearm] in commission or attempted commission of certain sex offenses) as "lesser included enhancements" of

---

an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general intent, even though he may not know that his act or conduct is unlawful.

(Resp't Lodgment No. 1 at 039.)

Penal Code section 12022.5(a) (personally using a firearm).
(*See* FAP, Ground 3, Argument 1 at 86-93.)  Respondent does not
address this specific issue in the Answer.[9]  (*See generally*,
Answer.)

As discussed above, a trial court must instruct on lesser
included *offenses* when there is substantial evidence that
defendant is guilty only of the lesser *offense*. *People v. Cook*,
91 Cal.App.4th 910, 917 (2001) (emphasis added).  The California
Supreme Court, however, has expressly held that a trial court
has no duty to instruct on "so-called lesser included
*enhancements*." *People v. Majors*, 18 Cal. 4th 385, 410-11 (1998)
(emphasis added).  Specifically, a trial court has no duty to
instruct on the enhancement of being armed with a firearm
(§ 12022(a)) as a lesser included enhancement of personally
using a firearm (§ 12022.5(a)).  *Id.*

Defense counsel was not ineffective in declining to request
an instruction under sections 12022(a) or 12022.3.  First, any
request by defense counsel that the jury be instructed as to
section 12022.3 would have been denied because that enhancement
applies specifically to use of a firearm during the commission
of certain sex offenses.  *See* Cal. Penal Code § 12022.3.[10]  Thus,

_____

[9] Respondent does, however, address a very similar claim based on
ineffective assistance of appellate counsel.  (*See* Answer at 16.)

[10] Cal. Penal Code § 12022.3 reads:

For each violation of Section 220 involving a specified
sexual offense, or for each violation or attempted
violation of Section 261, 262, 264.1, 286, 288, 288a, or
289, and in addition to the sentence provided, any person
shall receive the following:

(a) A 3-, 4-, or 10-year enhancement if the

-41-

defense counsel's failure to request such an instruction was not unreasonable.   See *Strickland*, 466 U.S. at 688.   Likewise, Cunningham has not shown he was prejudiced by failure to request an instruction under section 12022.3, an inapplicable enhancement, because the trial court would have overruled any such request. *See Strickland*, 466 U.S. at 694.

Second, Cunningham has not overcome the presumption that his attorney exercised sound trial strategy in declining to request the jury be instructed on section 12022(a).[11]   *See Morris v. California*, 966 F.2d 448, 456 (9th Cir. 1991). Review of counsel's performance is "highly deferential" and there is a "strong presumption" that counsel rendered adequate assistance and exercised reasonable professional judgment. *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1987); *see Strickland*, 466 U.S. at 686-87.   Here, there was no dispute that Cunningham was "armed" when the incident took place – Cunningham admitted it. (*See* Resp't Lodgment No. 2 at 245, 248.) The question was whether Cunningham had used the firearm in a "menacing manner" or had actually hit Castro with the gun.

person uses a firearm or a deadly weapon in the commission of the violation.

(b) A one-, two-, or five-year enhancement if the person is armed with a firearm or a deadly weapon.

[11]   California Penal Code section 12022(a) states, in relevant part:

(a)(1) Except as provided in subdivisions (c) and (d), any person who is armed with a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless the arming is an element of that offense.

(*See* Resp't Lodgment No. 2 at 30, 32, 73-74, 224-25.)  If the jury had been instructed on section 12022(a) it would surely have found the enhancement to be true, based on Cunningham's own admissions.  By only instructing  the jury as to "use" of a firearm, there was a possibility that Cunningham would be spared an enhancement altogether.  Thus defense counsel's decision not to request an instruction under section 12022(a) was not unreasonable.  *See Strickland*, 466 U.S. at 690.

Nor was Cunningham prejudiced by defense counsel's decision not to request the jury be instructed on "armed with a firearm" enhancement under section 12022(a).  That the jury found the "personal use" enhancement under section 12022.5 to be true shows it credited the testimony of Knox and Castro – specifically that Cunningham had threatened Castro with the gun, put the gun to Castro's neck and pushed him to the ground.  (*See* Resp't Lodgment No. 2 at 30, 32, 73-74.)  Given the jury's verdict, even if it had been instructed under section 12022(a), there is no reasonable possibility the outcome would have been any different.  *See Fretwell*, 506 U.S. at 372; *see also Strickland*, 466 U.S. at 694.

Thus, Cunningham has failed to satisfy both the deficiency prong and the prejudice prong of *Strickland*.  *See Miller*, 882 F.2d at 1434.  As such, the state court's denial of the claim was neither contrary to, nor an unreasonable application of *Strickland*.  *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254.  The Court recommends this claim be **DENIED**.

/ / /

/ / /

e.   Failure to Request Modification of CALJIC No.
2.52

Cunningham contends defense counsel was ineffective because he failed to request the trial court modify CALJIC No. 2.52, the "flight instruction." (FAP, Ground 3, Argument 2 at 94-97.) Respondent argues that Cunningham has failed to show prejudice under *Strickland* and therefore the state court's denial of the claim was neither contrary to, nor an unreasonable application of clearly established law. (*See* Answer at 19.)

As Cunningham acknowledges, defense counsel objected to CALJIC No. 2.52, arguing there was insufficient evidence of flight to warrant the instruction. (Resp't Lodgment No. 2 at 273.) The trial court disagreed and instructed the jury pursuant to CALJIC No. 2.52, as follows:

> The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding whether a defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide.

(Resp't Lodgment No. 1 at 035; *see also* Resp't Lodgment No. 2 at 292.)

Cunningham claims that when the trial court overruled the objection, defense counsel should have asked the court to modify the instruction to require the jury to make a preliminary finding as to whether Cunningham left the scene to avoid arrest. He suggests counsel should have requested the court instruct the jury that "whether or not evidence of flight show[ed] a consciousness of guilt, and the significance to be attached to

such circumstance, are matters for your determination." (FAP, Ground 3, Argument 2 at 99.)

The California Supreme Court has held that the CALJIC No. 2.52 flight instruction adequately conveys the "concept that if flight was found, the jury was permitted to consider alternative explanations for that flight other than defendant's consciousness of guilt." *People v. Barnett*, 17 Cal. 4th 1044, 1152-53 (1998) (citing *People v. Bradford*, 14 Cal. 4th 105, 1054-55 (1997)); *see also People v. Lucas*, 12 Cal. 4th 415, 471 (1995). Defense counsel's failure to request the modification to CALJIC No. 2.52 was not unreasonable because it did not alter the instruction in any meaningful way. *See Strickland*, 466 U.S. at 688. For the same reason, Cunningham has failed to show prejudice. *Id.* at 694.

Accordingly, the state court's denial of the claim was neither contrary to, nor an unreasonable application of *Strickland*. *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254. The Court recommends this claim be **DENIED**.

### f.   Failure to File a Motion to Suppress

Cunningham argues defense counsel was ineffective for failing to file a motion to suppress evidence of the guns. (*See* FAP, Ground 3, Argument 3 at 100-104.) Cunningham claims the guns were seized in violation of his Fourth Amendment rights. (*Id.*)

It is undisputed that the two guns in question were found in Cunningham's apartment by the property manager, Deborah Teich, who then turned the firearms over to police. (Resp't Lodgment No. 2 at 183-84.) Teich entered the apartment after

Cunningham had been evicted – approximately 3 weeks after he had vacated it – in order to remove his belongings so that a new tenant could move in. (*Id.*)  While cleaning out the apartment she found two shotguns in a closet and called police.  (*Id.*)  Both guns were admitted into evidence at trial.  (*Id.* at 184.)

Defense counsel's failure to file a motion to suppress was neither unreasonable nor prejudicial.  The Fourth Amendment proscribes only governmental action; and indeed, the amendment "is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *United States v. Jacobsen*, 466 U.S. 109, 113-14 (1984) (quoting *Walter v. United States*, 447 U.S. 649, 662, 100 S.Ct. 2395, 2404, 65 L.Ed.2d 410 (1980) (BLACKMUN, J., dissenting)).  The burden of proving that a private search is governmental action lies on the movant. *See United States v. Reed*, 15 F.3d 928, 931 (9th Cir.1994) ("The defendant has the burden of showing government action.")

In light of the facts, defense had no reasonable grounds for moving to suppress the evidence.  There is no evidence of government action and therefore any motion would have been futile.  Accordingly, counsel's failure to file a motion to suppress was neither deficient or nor prejudicial. *See Tomlin v. Meyers*, 30 F.3d 1235, 1238 (9th Cir. 1994) (citing *United States v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991) (stating it is not unreasonable for counsel to decline to file a meritless motion).)

The state court's denial of the claim was neither contrary

-46-

to, nor an unreasonable application of *Strickland*.   *See*
*Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254. The Court
recommends this claim be **DENIED**.

g.   Failure to Object to CALJIC No. 17.01

Cunningham argues defense counsel was ineffective in failing
to object to CALJIC No. 17.01.   He contends defense counsel
should have argued that he was deprived of due process because
he was charged with only one count of assault with a firearm
(Count 2) and nonetheless, the trial court instructed the jury
under CALJIC Number 17.01 that there were two incidents which
could form the basis of that conviction.   (*See* FAP, Ground 3,
Argument 4 at 105-14.)

Pursuant to the People's and defense counsel's requests, the
jury was instructed as follows:

> The defendant is accused of having committed the
> crime of assault with a firearm in Count 2.   The
> prosecution has introduced evidence for the purpose of
> showing that there is more than one act upon which a
> conviction on Count 2 may be based.   Defendant may be
> found guilty if the proof shows beyond a reasonable
> doubt that he committed any one or more of the acts.
> However, in order to return a verdict of guilty on
> Count 2, all jurors must agree that he committed the
> same act.   It is not necessary that the particular act
> agreed up on [sic] be stated in your verdict.

(Resp't Lodgment No. 1 at 053; *see also* Resp't Lodgment No. 2 at
322-23.)   After reading the instruction to the jury, the trial
judge stated:

> Now let me explain what that means.   You've heard
> evidence of certain events that occurred inside the
> apartment.   You've also heard evidence, I believe, of
> the defendant holding the gun in a certain manner while
> he was downstairs, I think, in the parking lot.   The
> prosecution has argued that either one of those events
> could support a conviction for Count 2.   What this
> instruction means is that all 12 of you must agree on
> which event or act occurred before you can find the

1    defendant guilty.

2  (Resp't Lodgment No. 2 at 323.)

3       The state court's denial of this claim was neither contrary

4  to, nor an unreasonable application of, clearly established law.

5  Defense counsel's decision not to object to CALJIC No. 17.01 was

6  not unreasonable.   First, there is nothing in the record to

7  suggest Cunningham failed to receive adequate notice as required

8  by the Due Process Clause. The Sixth Amendment guarantees a

9  criminal defendant a fundamental right to be clearly informed of

10 the nature and cause of the charges in order to adequately

11 prepare a defense. *Lincoln v. Sunn*, 807 F.2d 805, 812 (9th Cir.

12 1987).   A court looks first to the information to determine

13 whether a defendant has received adequate notice. *James v.*

14 *Borg*, 24 F.3d 20, 24 (9th Cir. 1994); *Lincoln*, 807 F.2d at 812.

15 The principal purpose of the information is to provide the

16 defendant with a description of  the charges against him in

17 sufficient detail to enable him to prepare his defense. *Borg*,

18 24 F.3d at 24; *United States v. Lane*, 765 F.2d 1376, 1380 (9th

19 Cir. 1985). An information is not constitutionally defective if

20 it "states  elements of an offense charged with sufficient

21 clarity to apprise a defendant of what to defend against."

22 *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985).

23      Here, it was adequately alleged in the Information that

24 Cunningham was charged with assaulting Jose Castro with a

25 firearm on September 12, 2004.  (Resp't Lodgment No. 1 at 002.)

26 This alone is sufficient to provide Cunningham with a sufficient

27 description of the charge to allow him to prepare his defense.

28 *See Borg*, 24 F.3d at 24.  Evidence was presented during the

trial that Cunningham hit Castro with the shotgun inside the apartment and later, while in the parking lot, pointed the shotgun up at Castro who was standing on the stairs. (Resp't Lodgment No. 1 at 170, 173, 174.) Either of these acts could amount to assault on Castro with a firearm under Penal Code 245. Thus, the jury was properly instructed that it must be unanimous as to which act formed the basis for its guilty verdict. *See People v. Diedrich*, 31 Cal. 3d 263, 280 (1982). Accordingly, defense counsel's failure to object on the basis of insufficient notice was neither unreasonable nor prejudicial. *See Strickland*, 466 U.S. at 688, 694.

Cunningham seems to argue that the instruction permitted the jury to find him guilty of assaulting Knox when the charging documents specified that Castro was the victim. This is not the case. The trial court made it clear to the parties that Castro was the only victim charged in the case. (Resp't Lodgment No. 2 at 179) (stating "the victim in this case is Castro, not Knox. . . . the People aren't going to be allowed to argue he's a victim of any of these crimes.") Likewise, the prosecutor never argued that Cunningham had assaulted Knox. Indeed, the prosecutor went out of his way to stress that Castro, not Knox, was the victim in this case. (*Id.* at 309-10.) Thus, as discussed above, Cunningham had adequate notice of the charges.

Any objection to CALJIC No. 17.01 would have been denied. Thus, Cunningham has failed to satisfy both the deficiency prong and the prejudice prong of *Strickland*. *See Boag,* 769 F.2d at 1344. As such, the state court's denial of the claim was neither contrary to, nor an unreasonable application of *Strickland*. *See*

*Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254. The Court recommends this claim be **DENIED**.

### 4.   *Ineffective Assistance of Appellate Counsel*

In his first two claims, Cunningham argues his Sixth Amendment right to effective assistance of appellate counsel was violated when appellate counsel failed to raise seven issues on appeal. (*See* FAP, Grounds 1 and 2 at 7-67.) Five of Cunningham's claims of ineffective assistance of appellate counsel arise from the same alleged errors raised in his claims of ineffective assistance of trial counsel. Cunningham raises two additional claims.

Cunningham raised these claims for the first and only time in a petition for habeas corpus to the California Supreme Court. (*See* Resp't Lodgment No. 10.) The petition was denied without comment or citation. (*See* Resp't Lodgment No. 11.) This Court must therefore conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Himes* 336 F.3d at 853.

It is clearly established that "[t]he proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)). A petitioner must first show that his appellate counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. He must then establish he was prejudiced by counsel's errors. *Id.* at 694. To establish prejudice, Cunningham must demonstrate that he

would have prevailed on appeal absent counsel's errors. *Smith*, 528 U.S. at 285.

The Ninth Circuit has observed that:

> [*Strickland's*] two prongs partially overlap when evaluating the performance of appellate counsel. In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. . . . Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason-because she declined to raise a weak issue.

*Miller*, 882 F.2d at 1434.

### a.   CALJIC Number 17.01

Cunningham argues appellate counsel was ineffective in failing argue on appeal that the trial court erred when it instructed the jury pursuant to CALJIC No. 17.01. (*See* FAP, Ground 1, Argument 1 at 8-18.)   As discussed in section (IV)(B)(3)(g) of this Report and Recommendation, the trial court did not err when it instructed the jury pursuant to 17.01. The Information filed by the District Attorney provided Cunningham with adequate notice of the charges against him. *See Borg,* 24 F.3d at 24.   Because evidence was presented at trial showed there may have been more than one assault committed against Castro, the jury was instructed pursuant to CALJIC No. 17.01 that, in order to find Cunningham guilty, it had to agree on the specific act which constituted the assault.   Contrary to Cunningham's claims, the jury was not permitted to find that Cunningham had assaulted Christopher Knox. (*See* Resp't Lodgment No. 1 at 002; Resp't Lodgment No. 2 at 179, 309-10.)

Because the state court did not err, appellate counsel's decision not to raise the claim on appeal was neither deficient nor prejudicial. *See Miller*, 882 F.2d at 1434. The state court's denial of the claim was neither contrary to, nor an unreasonable application of *Strickland*. *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254. The Court recommends this claim be **DENIED**.

                    b.   CALJIC No. 9.00 and "Simple Assault"

Cunningham argues his right to effective assistance of counsel was violated because appellate counsel did not argue on appeal that the trial court erred when it failed to properly instruct the jury regarding a lesser-included offense and as to the definition of "simple assault."   (FAP, Ground 1, Argument 2 at 19-23.)

Petitioner's claim fails for the same reasons discussed in section IV(B)(3)(b). The trial court properly instructed the jury on the definition of "simple" assault (*see* Resp't Lodgment No. 1 at 45, CALJIC No. 9.00, "Assault - Defined") as well as "assault with a deadly weapon" (*Id*. at 44). The jury was informed that it could convict Cunningham of the lesser-included offense of assault. (*See* Resp't Lodgment No. 1 at 68.) Finally, the trial court instructed the jury pursuant to CALJIC Number 17.12, that it could reach a guilty verdict on the lesser-included offense of simple assault if the jury was not satisfied beyond a reasonable doubt that Cunningham was guilty of assault with a firearm. (Resp't Lodgment No. 2 at 300-01; Resp't Lodgment No. 1 at 51.)

The state court did not err when instructing the jury as to

the lesser included offense of assault.  As such, appellate counsel's decision not to raise the claim on appeal was neither deficient nor prejudicial.  *See Miller*, 882 F.2d at 1434.  The state court's denial of this claim was neither contrary to, nor an unreasonable application of clearly established law.  *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254.  The Court therefore recommends this claim be **DENIED**.

### c.   CALJIC No. 17.19 and General Intent

Cunningham asserts appellate counsel was ineffective in failing to claim that the trial court erred in not properly instructing the jury on "general intent."  He asserts the court should have specifically instructed the jury that "general intent" applied to the personal use of a firearm allegations attached to Counts 1 and 2.  (FAP, Ground 1, Argument 3 at 24-26.)

As discussed in section IV(B)(3)(c), the trial court properly instructed the jury, pursuant to CALJIC No. 17.19, that in order to find the allegation of personal use of a firearm, it must find that Cunningham "intentionally displayed a firearm in a menacing manner, intentionally fired it or intentionally struck or hit a human being with it." (Resp't Lodgment No. 1 at 50.)  As such, the trial court adequately instructed the jury on the intent required under Penal Code §12022.5(a).  *See Atkins*, 1 25 Cal. 4th at 82.  Appellate counsel's decision not to raise the issue on appeal was neither unreasonable nor prejudicial because there was no error.  *See Miller*, 882 F.2d at 1434. Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of clearly

established law.  *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13.  The Court therefore recommends this claim be **DENIED**.

d. <u>Personally Armed with a Firearm Instruction</u>

Cunningham next argues that appellate counsel was ineffective in failing to argue on appeal that the trial court erred when it did not instruct the jury regarding lesser included sentencing enhancements.  He claims the court should have instructed the jury on "personal use of a firearm" pursuant to Penal Code sections 12022(a) or 12022.3(b), as a lesser included enhancement "personal use of a firearm" under Penal Code section 12022.5(a)(FAP, Ground 1, Argument 4 at 28-35.)

As discussed in section IV(B)(3)(c) of this Report and Recommendation, under California law, a trial court has no duty to instruct on "so-called lesser included enhancements." *Majors*, 18 Cal. 4th at 410-11.  Specifically, a trial court has no duty to instruct on being armed with a firearm (§ 12022(a)) as a lesser included enhancement of personally using a firearm (§ 12022.5(a)).  *Id*.  Because there was no error, appellate counsel's decision not to raise the issue on appeal was neither unreasonable nor prejudicial under *Strickland*.  *See Miller*, 882 F.2d at 1434.

The state court's denial of this claim was neither contrary to, nor an unreasonable application of clearly established law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13.  The Court therefore recommends this claim be **DENIED**.

e. <u>Circumstantial Evidence Instructions</u>

Next, Petitioner alleges appellate counsel was ineffective in failing to argue that the trial court improperly instructed

the jury regarding circumstantial evidence.   He alleges the trial court should have instructed the jury pursuant to CALJIC No. 2.01 (Sufficiency of Circumstantial Evidence – Generally) instead of CALJIC No. 2.02 (Sufficiency of Circumstantial Evidence to Prove Specific Intent or Mental State).   (FAP, Ground 1, Argument 6 at 45-56.)

As discussed in section IV(B)(3), the trial court noted that it was not permitted to give both instructions and it properly elected to give CALJIC No. 2.02 because the only circumstantial evidence that did not go toward state of mind was evidence that Cunningham had fled the scene and threw the gun out the window. *See Wright*, 52 Cal. 3d at 406.   The trial court properly elected to give CALJIC No. 2.02 along with a specific instruction on "flight after crime."   (*See* Resp't Lodgment No. 2, vol. 3 at 267-68.)   Any objection by defense counsel would therefore have been futile.   *See Wright*, 52 Cal. 3d at 406 (holding that CALJIC No. 2.01 is only appropriate when "circumstantial evidence is 'substantially relied on for proof of guilt'").   Thus, there was no error by the trial court and as such, appellate counsel's failure to raise the issue on appeal did not constitute ineffective assistance of appellate counsel.   *See Smith*, 528 U.S. at 285.

Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of clearly established law.   *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13.   The Court recommends this claim be **DENIED**.

f.   <u>Brandishing a Firearm Instruction</u>

Cunningham argues appellate counsel was ineffective in

failing to argue on appeal that the trial court should have instructed the jury that "brandishing a firearm" is a lesser-included offense of "assault with a firearm." (FAP, Ground 1, Argument 5 at at 35-45.)  California appellate courts have held that brandishing a firearm is not a lesser included offense of assault with a firearm. *See People v. Steele*, 82 Cal. App. 4th 212, 221 (2000) (stating that "the conclusion is inescapable that an assault with a firearm may be committed without the defendant brandishing such weapon.  Ergo, under the Supreme Court's own rule of analysis, . . . brandishing cannot be a lesser included offense to assault with a firearm.")

Because brandishing a firearm is not a lesser included offense of assault with a firearm, appellate counsel had no reason to raise the issue on appeal and if she had, it would have be rejected.  Cunningham has thus failed to satisfy either prong of *Strickland.  Strickland*, 466 U.S. at 688, 694.  The state court's denial of this claim, therefore, was neither contrary to, nor an unreasonable application of, clearly established law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13.  The Court recommends the claim be **DENIED**.

> g.    Failure to Request Voir Dire Transcripts and Raise
>        *Batson* Claim on Appeal

Cunningham contends appellate counsel was ineffective in failing to obtain a transcript of the jury voir dire.[12]

---

[12]   It is undisputed that appellate counsel did not obtain a transcript of the jury voir dire.  Indeed, the jury voir dire was not part of the state court record.  After reviewing Petitioner's claims, this Court ordered Respondent to have the jury voir dire transcribed and lodged with the Court.

Cunningham alleges that competent counsel would have reviewed the voir dire transcript and, as a result, successfully raised the issue on appeal.  Failure to do so, he argues, constituted ineffective assistance of appellate counsel. (FAP, Ground 2, Argument 1 at 58-61.)

A standard record on appeal includes the reporter's transcript of the oral proceedings at trial, but does not necessarily include "the voir dire examination of jurors and any opening statements."  Cal. Rules of Court, Rule 8.320(c)(3).  A party, however, may move to augment the record to include matters outside the normal record.  *Id.* at Rule 8.155.  To justify augmentation, the party must signify with some certainty "how materials not included in the normal transcript may be useful to him on appeal." *People v. Hill*, 67 Cal. 2d 105, 124 (1967).

Here, there is evidence in the state court record that trial counsel objected to the dismissal of jurors pursuant to *People v. Wheeler*, 22 Cal. 3d 258 (1978) – the California version of *Batson v. Kentucky*, 476 U.S. 79 (1986). (Resp't Lodgment No. 1 at 107.)  There is nothing in the record to indicate whether appellate counsel considered the issue and determined it was not necessary to obtain the transcript or whether her failure to request the transcript was due to oversight or incompetence. Regardless, this Court need not decide whether appellate counsel's failure to obtain the voir dire transcript was deficient performance under *Strickland* because Cunningham cannot show that a *Batson* claim would have been successful had it been raised on appeal.  *See Smith*, 528 U.S. at 285.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prevents a prosecutor from systematically eliminating potential jurors on the basis of racial identity. *Batson*, 476 U.S. 79.  In *Purkett v. Elem*, 514 U.S. 765 (1995), the United States Supreme Court outlined the steps a court must follow in conducting a *Batson* analysis:

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two).  If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination. *Hernandez v. New York*, 500 U.S. 352, 358-359, 111 S.Ct. 1859, 1865-66, 114 L.Ed.2d 395 (1991) (plurality opinion); id., at 375, 111 S.Ct. at 1874 (O'CONNOR, J., concurring in judgment); *Batson*, supra, at 96-98, 106 S.Ct., at 1722-1723.

*Id.* at 1170-71; *see also Mitleider v. Hall*, 391 F.3d 1039, 1047 (9th Cir. 2004).  A state court's determination as to whether a prima facie case has been made is a factual determination entitled to a presumption of correctness. *Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999).

The Supreme Court has fleshed out step two of the *Batson* inquiry as follows:

> A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror.  At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation.  Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

*Hernandez v. New York*, 500 U.S. 352, 360 (1991).

Finally, once the prosecutor has put forth race neutral reasons for his strikes, the trial court must proceed to the third step of the *Batson* inquiry and determine "whether the

opponent of the strike has proved purposeful racial discrimination." *Johnson v. California*, 545 U.S. 162, 168 (2005)(citing *Purkett*, 514 U.S. at 767). At this stage, the judge is required to "assess the plausibility of that reason in light of all evidence with a bearing on it." *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005). The trial judge must determine whether the reasons advanced by the prosecutor are "pretextual" and the judge's conclusion "'largely will turn on evaluation of credibility.'" *Hernandez*, 500 U.S. at 365 (quoting *Batson*, 476 U.S. at 98)). As the *Hernandez* court noted, "[i]n the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Id*.

Here, defense counsel objected to the dismissal of two African American jurors, noting that he and the defendant were African American and the prosecutor had used peremptory challenges to excuse the only two African American males on the panel of approximately 42 potential jurors. (Resp't Supp. Lodgment No. 1 at 118.). Defense counsel further observed that both excused jurors exhibited no bias when questioned and had given "solid answers" during voir dire. (*Id.*)

In response, the trial judge found that defense counsel had stated a prima facie case, stating:

> The record should reflect that Juror Number 2 is an African American female at this point, at least she's not been excused by anyone. Mr. [C.] was the original juror number 18. He was an African-American male and was excused by the prosecution, and then now Mr. [M.] has been excused as well. It is a close case, but I'm prepared at this time to find a prima facia [sic] case of possible racial selection by the people. . . and therefore put the burden on the people to explain their

choices both as to Mr. [C.] and Mr. [M.]
(*Id.* at 118-19.)

The prosecutor then explained that he had struck Mr. C. based on his statements that people who were incarcerated were predominantly African-Americans, and therefore he thought that "there was no way [Mr. C.] could be fair and impartial because of race." (*Id.* at 119.)  As for Mr. M., the prosecutor stated that he had struck him because he was very young and when asked specific questions he had given unresponsive answers like "I guess."  The prosecutor also explained that Mr. M. slouched in his chair and appeared inattentive. (*Id.* at 120.)

Defense counsel responded that Mr. M.'s answers were similar to Juror Number 5's, who was not struck.  As to Mr. C., defense counsel stated that his responses indicated that, if anything, he would be biased against the defendant. (*Id.* at 120-21.)

The trial court then made its ruling, stating:

> You know, I was a little surprised when Mr. C. was excused.  But in thinking about it and hearing Mr. Link's explanation of it, I think there were solid reasons for it.  Mr. C. did in fact step to the plate, and respond and gave some kind of hard to follow explanation about African American men who are in jails more so than anybody else, and the thought that if this defendant had been incarcerated before that would mean one thing, and if he hadn't been incarcerated before that would mean something else.  But then when the court kind of asked him some follow-up questions, what it really came down to was well he would try to assess the evidence and the law without regard to whether this particular African-American male, Mr. Cunningham, had ever been in custody.  I, frankly was left with really not knowing where Mr. C. was coming from.  He seemed like an intelligent man, but he popped up about African American males and incarceration, and really I'm not sure what his point was.  And I think the People were free to excuse him for the reason that he may well have had some prejudice in favor of African-American males or against them.  I'm still not sure what it was.  But his comments in that regard were sufficient reason for

either counsel to excuse Mr. C.

Now, we get into a more dicey situation with Mr. M.  The record should reflect that Mr. M. appears to be somewhere around 18 and 20 years old to me.  He's African-American.  He is a student at Cuyamaca College.  He gave appropriate answers under the biographical part of the rendition that everybody had to give.  His father, I think he said, is in the fire department.  His mother is with an insurance company.

Body language is one thing that does not come across very well on the record, and it appears the one thing that Mr. Link is hanging his hat on.  And I must say that Mr. M.'s body language was not something that if I were a prosecutor I would be particularly comfortable with.  I observed Mr. M. when he answered Mr. Link's questions.  He did not give eye contact, he looked downward, he had his hand up toward his mouth the entire time, he appeared defensive, he appeared uncommunicative, and like many very young people, he gave one syllable, one word answers to most of the questions without looking at you.  I would say that his body language was negative.

It appeared somewhat negative to me about even being here, and I feel that people picked up on it.  And I don't know if our appellate courts have indicated that body language is something that can be taken into account but in Mr. M.'s case it was clearly negative.  I can't say it was negative necessarily toward the prosecution as opposed to towards the entire process, but he was not engaged.  And for that reason, I'm going to deny the *Batson/Wheeler* motion.  And I take into account the fact that there is at least one other African-American that remains on the jury that has not been excused, that being juror number 2.  So for those reasons, the motion is denied.

(*Id.* at 121-23.)

The trial court properly denied Cunningham's *Batson* claim. In response to the court's finding of a prima facie case, the prosecutor set forth race neutral explanations for striking both jurors.  First, the prosecutor explained that he excused Mr. M. because his one word answers and body language suggested he was inattentive and disinterested in the proceedings.  (Resp't Supp. Lodgment at 118.)   The trial court then concluded that the

prosecutor's explanation was reasonable and not pretextual. The court commented that it too noticed that Mr. M. failed to make eye contact when answering questions and displayed defensive and negative body language. (*Id.* at 121-23.)

California courts have held that body language can be an acceptable race neutral reason for exercising a peremptory challenge. *See People v. Dunn*, 40 Cal. App. 1039, 1047 (1995) (finding no error when the prosecutor struck an African-American because she was frowning and appeared to lack interest in the proceedings); *People v. Turner*, 8 Cal. 4th 137, 170 (1994) (finding no error where the prosecutor used a peremptory challenge to excuse an African-American because she had a defensive body position, would not make eye contact with the prosecutor and appeared hostile). Like *Dunn* and *Turner*, the prosecutor's explanation here was based on the impression the prospective juror's body language gave, in conjunction with other factors.

This case is distinguishable from *McClain v. Prunty*, 217 F.3d 1209, 1223 (9th Cir. 2000). In *McClain*, one of the reasons the prosecutor gave for excusing a juror was that her "body language was unacceptable because she had her elbow on her chair." *Id.* The court held this explanation was insufficient because "the prosecutor did not explain the significance of [the juror's] body language." Here, the prosecutor explained that Mr. M.'s body language, coupled with his answers, suggested that he might not be sufficiently attentive during the proceedings. The trial court clearly found the prosecutor's explanations credible, having made the same observations regarding Mr. M.'s

body language and disposition.  *See Hernandez*, 500 U.S. at 365.
Accordingly, the court did not err in concluding that defense
counsel had not met his burden of proving intentional
discrimination with respect to Mr. M.

With regard to Mr. C., the prosecutor explained that he had
excused Mr. C. based on his views regarding the high rate of
incarcerated African-Americans. (Resp't Supp. Lodgment at 118.)
The prosecutor stated that he believed "there was no way [Mr.
C.] could be fair and impartial because of race." (*Id.*)  During
initial questioning of the jurors, the trial judge asked whether
"race is going to be an issue with any of you potentially."
(*Id.* at 48.)  Mr. C. raised his hand and the following exchange
took place:

> MR. C.:  Well, it's not so much the race issue.  But
> I feel that the incarceration of African-
> American males in our system in most of the
> prisons today – and I don't know if this
> gentleman has had any experience – but I
> would think if he has been incarcerated
> before or hasn't been I would probably want
> to weigh that in any decisions that I make
> concerning this case.
>
> COURT:  Well, let's do two assumptions.  I'm going to
> give you two assumptions. I'm going to assume
> – first of all let's assume that Mr.
> Cunningham has never been incarcerated
> before.  Assume that to be true and tell me
> how that would affect you as a deliberating
> juror.
>
> MR. C.:  I would probably tend to look at the evidence
> a lot closer to determine if in fact he is
> guilty of the charges against him.  And
> conversely if in fact he has had problems
> before, I would probably be more reluctant to
> not weigh it as heavily if there's been other
> incidents with criminal activity.
>
> COURT:  I'm sorry.  You'd be not as reluctant to
> weigh what as heavily?

MR. C.:    The evidence.

COURT:     Let's assume – well, let's go to the second
           point.   Let's assume that he has been
           incarcerated at some point in his life.   How
           would that affect your job as a juror?   Are
           you saying that you would be – you would
           follow the evidence less closely in that
           regard.

MR. C.:    Well, not so much less closely.   But I would
           probably weigh the circumstances in which the
           evidence came about a lot more closer?

COURT:     Okay.   A lot more closely?

MR. C.:    Yes, sir.

COURT:     But if you assume that he's never been
           incarcerated, then you would look at the
           circumstances less closely.   I'm not trying
           to play word games.   I'm trying to see–

MR. C.:    I understand what you're saying.   And I guess
           the first time – you know, the first time
           conviction of anything should be scrutinized
           for a lot of things.   I would look at it a
           lot more closely in those cases.

COURT:     You're not going to hear any evidence as to
           whether or not Mr. Cunningham has ever been
           incarcerated before, and the reason you're
           not is because it's not relevant under the
           law of [sic] whether or not he's guilty or
           not guilty of the crimes charged in this
           case.   It is improper and, frankly illegal
           for any juror, for example, to assume that a
           person who maybe had been in trouble before
           is probably guilty again.

(Resp't Supp. Lodgment at 48-50.)

The court went on to explain that the jurors would hear
evidence that Mr. Cunningham had previously been convicted of a
felony but that Mr. C. was not to assume that he had or had not
been to jail.   (*Id.* at 50-51.) The exchange concluded as
follows:

COURT:     [Y]ou're not allowed to [consider the fact
           that Mr. Cunningham has been previously
           convicted of a felony] and allow it into your

> decision-making process on whether he committed the crimes charged today. . . It may be counter-intuitive to not consider it, but you're going to be instructed not to consider it. Is it something that you can do, or do you think it's going to be too hard for you to disregard that?

> MR. C.: I'm a fair man. I don't think I would.

(*Id.* at 51.)

Mr. C.'s comments, while not entirely clear, suggested that he might weigh the evidence differently depending on whether or not the defendant previously had been incarcerated. (*Id.* at 49-50.) Thus, the prosecutor's "explanation for excusing Mr. C. was based on something other than the race of the juror." *See Hernandez*, 500 U.S. at 360.

Having found the prosecutor's explanation was not based on Mr. C.'s race, the trial judge was left to determine "whether the opponent of the strike has proved purposeful racial discrimination." *Purkett*, 514 U.S. at 1170-71. Here, the trial court observed that Mr. C.'s comments suggested he might have a bias based on his views about incarcerated African-Americans. Having made the same observations regarding Mr. C.'s comments, the trial court found the prosecutor's explanation credible. *See Hernandez*, 500 U.S. at 365. Based on a through review of the record, this Court finds the trial court properly concluded that defense counsel had not met his burden of proving intentional discrimination with respect to Mr. C. As such, there was no *Batson* violation as to Mr. C.

In sum, the state trial court correctly followed the three prong *Batson* test, and its conclusions are amply supported by the record. As such, Cunnningham cannot show he was prejudiced

by appellate counsel's failure to pursue a *Batson* claim on appeal. *See Smith*, 528 U.S. at 285. Accordingly, the state court's silent denial of this claim is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. See Williams, 529 U.S. at 412-13. The Court recommends this claim be **DENIED.**

### h. Cumulative Errors

Finally, Cunningham claims appellate counsel was ineffective based on the cumulative effect of all the alleged errors discussed above. (*See*, FAP Ground 2, Argument 2 at 62-67.) While any single error may not have deprived a defendant of due process when considered alone, a series of errors may have the cumulative effect of denying a defendant due process when considered together. *See Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000). In the context of ineffective assistance of counsel, the Ninth Circuit has held that "prejudice may result from the cumulative impact of multiple deficiencies." *Harris ex rel. Ramseyer v. Wood*, 64 F.3d 1432, 1438 (9th Cir. 1995) (quoting *Cooper v. Fitzharris*, 586 F.2d 1325, 1333 (9th Cir. 1978)).

Cunningham is not entitled to relief under the cumulative error doctrine. Even assuming appellate counsel's failure to obtain the voir dire transcript was deficient performance, this single misstep did not render Cunningham's trial fundamentally unfair. *See Davis v. Woodford*, 384 F.3d 628, 654 (9th Cir. 2004). As discussed above, Cunningham has not demonstrated prejudice as to his *Batson* claim or any of his other individual claims of ineffective assistance of appellate counsel. Thus,

07cv2183

there is no "cumulative prejudice." *See id.* Accordingly, Cunningham has not shown he was denied due process under the cumulative error doctrine. Thus, the Court recommends the claims be **DENIED**.

### 5.   Motion for Procedural Default

On March 2, 2010, Cunningham filed a document entitled "Motion: Procedural Default" [doc. no. 77]. The basis for the motion is not entirely clear to this Court. In the motion, Cunningham notes that the Court ordered Respondent to lodge the transcript of the jury voir dire and any related documents. He claims that Respondent failed to submit a copy of a relevant minute order, which was referenced in the Answer. Cunningham is incorrect. A copy of the minute order cited by Respondent is part of the trial court record originally lodged with this Court. (Resp't Lodgment No. 1 at 106-07.) Accordingly, Respondent was not required to re-submit a copy of the order. Therefore, Cunningham's "motion" is **DENIED**.

## V.   CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to the United States District Judge Dana M. Sabraw, under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, **IT HEREBY RECOMMENDED** that the Court issue an Order:  (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition with prejudice.

**IT IS ORDERED** that **no later than June 16, 2010**, any party to this action may file written objections with the Court and

serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

   **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than July 7, 2010**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED:  May 25, 2010

BARBARA L. MAJOR
United States Magistrate Judge

07cv2183